### THE POLING BROS. NO. 2.
### THE STERLING.
#### No. 87.

Circuit Court of Appeals, Second Circuit.

Dec. 19, 1932.

Alexander, Ash & Jones, of New York City (Edward Ash, of New York City, of counsel), for appellant.

Purdy & Purdy, of New York City (Edmund F. Lamb, of New York City, of counsel), for appellee.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

L. HAND, Circuit Judge.

This suit is for a collision just off the north end of the entrance to the Atlantic Basin in broad daylight on a fair summer's day. The libellant's tug, "Poling," was coming down stream on the ebb within three hundred feet of the shore, which at that place is the west side of pier thirty-three. The claimant's tug, "Sterling," was coming out of the basin with a barge on her port hand; she was bound up stream, and had already begun to turn under a port wheel before she emerged. The collision took place about in the "Poling's" tracks, so that whatever her distance from the pier, the "Sterling" had covered it before the port corner of her barge struck the "Poling" some fifteen feet abaft her bow on the port side.

■ We agree with the judge that the "Poling" was at fault for coming down too close to the pier. His opinion[1] says that she was "not less" than three hundred feet off, but this was almost certainly an inadvertence. Nobody put her further away. Her deck hand said she was two hundred feet off, and the "Sterling" only about seventy-five feet. Her master, her engineer and a disinterested, though officious, witness put her only three hundred feet off. The actual distance is a mere guess, but we may safely say that she was within three hundred feet. This was too close, especially as she was on a tide of four knots, and though her engines had been stopped, she had not yet run off her way. In view of the possibility that other vessels might be coming out, she should have kept further off until she could see into the basin. If this required her to turn more than ninety degrees

[1] Orally.

and enter against the tide, it was not troublesome to do so, and she could not be excused if it had been. Her actual course made dangerous the exit of the "Sterling," or any other vessel so situated.

On the other hand we cannot exonerate the "Sterling." Assuming with the judge that she had between two and three hundred feet clear water before she crossed the "Poling's" course, she should have had no difficulty in stopping her way after she saw her. As she had, while yet in the basin, partly turned under a port wheel, the tide was already somewhat under her foot, when she came out, and she could have held her position. Though the presence of the "Poling" may have been unexpected, she could see nothing to starboard before she got out, and should have considered that vessels do at times come down nearer than they ought. Nothing that we can think of required her to run between two and three hundred feet before she stopped. The judge held her at fault for not repeating a slip whistle within four hundred and fifty feet, but for some undisclosed reason exonerated her notwithstanding. We do not charge her with that, but we do hold her for failing to keep herself in hand.

The case was not a starboard hand crossing. The shed on pier thirty-three hid the vessels from each other till the "Sterling" emerged; neither had any opportunity to shape her course with regard to the other, and this the rule presupposes. It was a case of special circumstances where each was bound to anticipate the possibility of the other's presence, and apparently neither did. While therefore we reach the same conclusion as the judge that each was at fault, we find a different fault in the "Sterling," and we cast her for half damages.

Decree modified and libellant allowed half damages.