### THE D. S. NO. 30.
### THE DYNAMIC.

### THE NEW YORK CENTRAL NO. 2.
#### Nos. A–16034, A–15961.

District Court, E. D. New York.

Dec. 5, 1940.

William C. Chanler, Corp. Counsel, and George S. Franklin, both of New York City, for City of New York.

Mahar & Mason, of New York City (Frank C. Mason, of New York City, of counsel), for Conners Marine Co., Inc.

Jacob Aronson, of New York City (K. O. Mott-Smith, of New York City, of counsel), for New York Cent. R. Co.

GALSTON, District Judge.

At the trial it was stipulated that the causes be tried together on the same proof and that one decision will suffice.

On February 23rd, 1940, the Sanitation No. 30, a scow owned by the City of New York, was taken in tow by the tug Dynamic in Wallabout Canal. The scow was towed stern ahead on the port side of the tug and was loaded. The scow was about 70 feet ahead of the stern of the tug. The tow proceeded on half speed out of the canal; then the tug backed to stop the momentum and to swing the barge to go out toward the East River. Before swinging around, the tow was pointed toward what was referred to at the trial as the power-house dock—the tug's starboard shore. Then the Dynamic proceeded at half-speed. The deckhand of the tug acted as lookout and was stationed on the stern quarter of the scow in view of the master of the Dynamic from his pilot-house. It is to be noted that with barge ahead of the stern of the tug and loaded with garbage to a height of 11 feet, the captain had a restricted port view. From his lookout he received a signal to blow one whistle, which he gave. At that time there were some coal-boats tied up at the power-house dock on his starboard hand, and about 150 feet away from the head of the scow. Then he got a backing signal from his deckhand, and about the time the Dynamic backed, the captain observed the New York Central No. 2 and the car float in tow. At the time of backing he gave three blasts to indicate that he was backing. Hoyer received no signals from the Central No. 2. The latter came on and a collision resulted, the starboard corner of the car float coming in contact with the middle stern of the scow.

The car float No. 27 was on the starboard side of the Central No. 2. Hansen, the captain of the Central tug at the time, was in the pilot-house. This tow had come from Weehawken and was destined to the New York Central Pier No. 3 in Wallabout Canal, beyond the City Ash Dump pier. About 170 feet the car float projected beyond the bow of the tug. The former was 277 in length, and the latter 90 feet. The car float too was loaded. As his tow approached the channel from the East River, Hansen said he stopped his boat and permitted the tow to drift with the tide on the entrance to the channel. The tide was flood. He said he blew a long whistle at that time. When his pilot-house was abreast of the corner of the Navy Yard he observed the City scow, which he thought was hanging on one line, for he did not at that time see the Dynamic. As he swung around the Navy Yard corner (Cobb Dock) to enter the channel, the car float was only 5 or 10 feet off the end of the dock. At the time of entering the channel there were no vessels ahead.

Since Wallabout Channel is but 300 feet in width it was careless navigation for a tug 90 feet in length, having in tow a car float of 277 feet which extended so much beyond her bow to enter the gap so close to the Cobb Dock. The primary fault lay with the Central No. 2 in failing to stand outside and observe conditions in the narrow basin so as to proceed on her starboard hand. At the time of the collision, instead of holding to that hand, she was headed across the basin toward the coal-boats at the power-house dock on her port hand. See The Poling Bros. No. 2, 2 Cir., 62 F.2d 357; The Samson, 2 Cir., 93 F.2d 497.

That the one-whistle signal from the Dynamic was given is established by two independent witnesses—the captain of the City scow and the Rainbow (one of the coal-boats in question at the power-house dock). That signal either was not heard by those on the Central No. 2 and car float, or ignored if heard. Failure of the deckhand or lookout on the car float to report the signal to the captain of the Central No. 2 apparently was of some importance, for Hansen testified that had he received such report or heard the signal, "I would have put my wheel over to starboard quicker and come ahead at full

speed to throw the float over to the Navy Yard."

In the circumstances the libellants may have a decree.

Submit findings of fact and conclusions of law in conformity with the foregoing opinion.