## THE ISABEL A. McALLISTER.

## THE SOCONY NO. 16.

### McALLISTER BROS., Inc., v. THE SOCONY NO. 16 et al.

### No. 16141.

District Court, E. D. New York.

April 23, 1941.

Dow, McAllister & Symmers, of New York City (Gerard M. McAllister, of New York City, of counsel), for libellant.

Macklin, Brown, Lenahan & Speer, of New York City, (Paul Speer, of New York City, of counsel), for respondent.

GALSTON, District Judge.

On September 26, 1940, shortly after 9 P. M., the tug Isabel A. McAllister, with a deck scow made fast to its port side, proceeded from Pier 6, East River, to Pier 36, Atlantic Basin.

The scow was loaded with a cargo of scrap iron and was being towed stern first with the stem of the tug approximately 25 feet aft of the forward end of the scow. The tow proceeded along the upper end of Buttermilk Channel, off the Brooklyn shore. The tug Isabel A. McAllister is about 95 feet long and 24 feet beam, and the scow Maui which she had in tow was 120 feet long and 30 feet in width. Her captain claims that as the Isabel A. McAllister approached Erie Basin he sounded a one-whistle signal and intended to enter the gap close to the end of Pier 33. It had been his practice when entering the gap on an ebb tide, with a scow on his port side and with the tide in his favor, to "hover right in close to Pier 33, Brooklyn,— keep your bow right in close to Pier 33, Brooklyn. But before you approach there you blow a long slip whistle and if you don't get any answer you take it for granted that everything is clear and you shape your course accordingly and come right in; there is nothing to stop you."

Evans, the captain, said that on getting no response to his slip whistle he headed for the end of the pier in accordance with his practice. The tide was running ebb, approximately two and a half to three miles an hour, and his tug was proceeding over the ground at the rate of approximately five miles an hour. As the tow approached Pier 33 he said there suddenly loomed up in the course of the Isabel A. McAllister the bow of a large oil barge, protruding beyond the out-river side of Pier 33 a distance of 4 or 5 feet. To avoid collision he endeavored to go astern for 20 to 30 seconds, then went ahead full speed with a hard left wheel in order to swing into the gap, but in avoiding the collision with the Socony barge, the starboard side of the tug Isabel A. McAllister was brought into contact with the end of Pier 38.

The Socony # 122 had been discharging fuel oil into a ship lying alongside on the west side of Pier 34, the second pier on the north side of the Atlantic Basin, Pier 33 being the outside pier. Directly opposite Pier 33 is Pier 38, the two being separated by a distance of about 300 feet, and it is through this gap that vessels must pass in

entering or leaving the basin. These two piers are about 158 feet in width. After the fuel oil had been completely discharged from the barge Socony # 122, the steam-tug Socony # 16, which was moored along-side the barge Socony # 122, proceeded to back out of the slip between Piers 33 and 34. The Socony # 16 is 97 feet long, 25 feet in width, and the Socony barge is 258 feet long and 40 feet in width. The barge had been made fast on the starboard side of the tug, and the bow of the barge extended about 150 feet ahead of the bow of the tug.

The tug had regulation towing lights and running lights and the barge had a light on the starboard bow and on the starboard stern in their regular positions. Though those on the Isabel A. McAllister testified that they had heard no slip whistle, I am persuaded by the affirmative testimony given by those on the Socony that a slip whistle was given to warn vessels which might be operating in the Atlantic Basin, and then a second slip whistle was given as her tow was shaping to proceed out of the gap. After that second whistle had been blown a whistle was heard from another vessel out-side of the basin and the engines of the Socony # 16 were then stopped. I accept the testimony of her witnesses that she re-mained approximately motionless and had no headway, awaiting the approach of the other vessel. At the time there was no wind and that condition made it possible for the Socony tow to remain in the condition stat-ed. The shed which covers Pier 33 inter-feres with the vision of those coming down Buttermilk Channel, so that they cannot see the vessel within the Basin and likewise the vessels in the Basin cannot see those in Buttermilk Channel. As the Socony tow lay to, the Isabel A. McAllister appeared out in Buttermilk Channel, heading oblique-ly toward the gap.

■■ In this situation the Socony can-not be charged with fault. The cause of the damage undoubtedly arose from the failure of the Isabel A. McAllister to round to and observe what was in the Basin before en-deavoring to enter. Certainly the Isabel A. McAllister had no right to shave the end of Pier 33 without being absolutely sure that she could enter in that fashion without con-sequent damage. The Isabel A. McAllister endeavored by opinion evidence to sustain the existence of a custom in support of that maneuver; but the existence of that custom was not established by satisfactory testi-mony. The only condition which would have justified the Isabel A. McAllister in proceeding as she did would have been the certain knowledge that there was nothing in the Basin to interfere with her maneuver. Her captain acted in the belief that there had been no slip whistle given in response to his signal. That question of fact I must resolve in favor of the Socony. I think it wholly unlikely that the Socony would have endeavored to pass out of the gap without blowing whistles as her captain and crew testified. Then too consideration must be given to the speed at which the Isabel A. McAllister was proceeding with the favor-ing ebb tide. It was not a speed which jus-tified shaving the end of Pier 33.

Nor is the evidence satisfactory concern-ing the various positions ascribed to the Socony barge when first sighted by those on the Isabel A. McAllister. Captain Evans says that the bow of the barge extended 4 or 5 feet past the outer end of Pier 33; the mate, Jacobsen, said that the bow of the barge was flush with the outside corner of the pier; and Seaman, who was standing on the stern of his barge, placed it, when he testified before the local inspectors, flush with the "inside corner of 33", though at the trial he gave somewhat different testimony. Such navigation as that of the Isabel A. McAllister, in shaving the end of the dock without rounding to, was disapproved in The Poling Bros. No. 2, 2 Cir., 62 F.2d 357; The Samson, 2 Cir., 93 F.2d 497; The George S. Tice, D.C., 37 F.2d 101; and The New York Central No. 2 (City of New York v. Motor Tug Dynamic), D.C., 35 F. Supp. 907, 1941 A.M.C. 228.

I conclude that neither the position of the Socony nor anything she did was the proximate cause of the damage which the Isabel A. McAllister sustained.

The libel will be dismissed. Submit find-ings of fact and conclusions of law in ac-cordance with the foregoing opinion.